UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. _____

FILED
CHARLOTTE, NC

FEB 17 2022

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| Tigress McDaniel and minor child, Plaintiff | |
| VERSUS | |
| The McClatchy Company, McClatchy Investment Company, McClatchy Newspapers Inc. The McClatchy Company dba The Charlotte Obsever and Does, Defendant(s) | |

**COMPLAINT** 3:22-cv-65-RJC

## A. JURISDICTION

Jurisdiction is proper in this court according to:

__X__ Gross and Vicarious Negligence, Negligence, and/or Negligence Per Se
For An Amount In Controversy Exceeding $75,000.00 USD

__X__ 28 U.S. Code § 4101 Defamation and Libel, Defamation Per Se, Defamation Per Quod

__X__ Title 17 U.S. Code § 501 Infringement of Copyright

## B. PARTIES

1. The Plaintiff, Tigress Sydney Acute McDaniel born December 5, 1976, is a resident of Mecklenburg County, Charlotte, North Carolina. Plaintiff is a community leader and public figure and has vied for several high profile public office positions since 2013.

2. Minor child is Plaintiff's biological male child, born on 2010 and resides with Plaintiff fulltime, as she is the active parent and sole custodian since his birth.

3. Defendants, The McClatchy Company and/or The McClathy Company dba The Charlotte Observer, McClathy Investment Company, McClatchy Newspapers Inc. and Does (hereinafter "McClatchy"), is a for profit corporation, incorporated in the State of California, and having foreign status to operate in various states of the United States of America. Defendants maintain the same principal office address, officers, and register agent (Attached as Exhibits separately pursuant to Federal Rules of Civil Procedure, and Plaintiff reincorporates this affirmative statement for all exhibits referenced herein and in her successive pleadings to litigate this action).

## C. NATURE OF CASE AND FACTUAL ALLEGATIONS

NOW COMES Plaintiff, complaining of the Defendants, alleges and says:

1. Plaintiff is a resident of Mecklenburg County, North Carolina, and is of legal age and under no legal disability, and further qualifies as reasonable prudent person, and asserts full protected rights to initiate this action on both her own behalf and that of her minor child.

2. Defendants are all entities registered with the Secretary of State for either or both their respective states of incorporation and principal office and the State of North Carolina, and operate a principal office or otherwise operate regular substantial commercial business activity under their respective entity names, albeit doing business as fictitious entity names, non-exclusively in Mecklenburg County, North Carolina. Defendants own news publications companies that publish articles publicly and offer subscriptions at costs. The McClatchy Company is the parent corporation or otherwise parent entity of the other named Defendants. Thus, Defendants are referred to both collectively as one entity

or otherwise subordinate or subsidiary entities acting as authorized agents by its principal, The McClatchy Company, and individually where necessary (for instance "Charlotte Observer") in this action, because they are directly or alternatively vicariously liable.

3. All torts and relevant acts asserted in this complaint occurred in Mecklenburg County, North Carolina and the United States of America.

### D. CAUSE OF ACTION

Plaintiff, *pro se*, proceeding upon my Complaint as an indigent party, alleges that her constitutional rights, privileges or immunities have been violated and that Defendants are proximate and actual cause for all torts herein detailed that Plaintiff has suffered, and the following facts form the basis for her allegations:

1. Beginning on or about May 25, 2018, Defendants did factually publicly publish false defamatory libelous statements about Plaintiff in new articles in their subsidiary publication, The Charlotte Observer, entitled as follows (Attached as Exhibits separately):

    a) "She has filed more than 160 lawsuits; now a judge has stepped in to stop her" Published May 25, 2018

    b) "Class volunteers get sued by a fellow parent. Why CMS says the district can't help" Published March 30, 2018

    c) "Judge drops CMS parent volunteer from lawsuit over M&M's at a classroom party" Published April 10, 2018

2. The false defamatory libelous statements include the following:

    a) "She has filed more than 160 lawsuits"

b) "A former political candidate who has filed more than 160 lawsuits across North Carolina"

c) "McDaniel was not on hand May 18 to hear Bell's order. She did not reply to Observer emails Thursday seeking comment."

d) "Bell told the Observer she handed down the restrictions against McDaniel "to protect the integrity" of the Mecklenburg judicial process."

e) "According to Bell, McDaniel has failed to follow the rules of civil procedure in her Mecklenburg cases and had filed lawsuits "for the purpose of harassment."

f) "McDaniel dropped the complaint on April 16 during a court hearing. But Bell said McDaniel did not inform the judge that she had filed an identical complaint four days before against the same parties, including a CMS volunteer whom Bell had dropped from the case on April 10."

g) "Given Ms. McDaniel's extensive history of abuse of the judicial process, the remedy of a gatekeeper order is necessary to restrain her from burdening the courts and the public with her manifestly frivolous lawsuits," he said.

h) "Holloway's lawyer, Lane Williamson, said there are no grounds for a claim because McDaniel's suit says only that her son brought the M&M's home. It does not say that he ate them, let alone got sick."

i) He said his research found that McDaniel has been involved in 162 civil cases, including "at least 70" in Guilford and Mecklenburg counties. Williamson said he also found two "gatekeeper orders" filed against her. A gatekeeper order is a restriction requiring court approval to file lawsuits, used to prevent abuse of the legal process.

j) "This is a burden on the taxpayers," Williamson said. "This is a burden on the courts. ... This needs to be stopped. It's a cancer on the judicial system and it needs to be excised here."

k) "The gatekeeper orders involving McDaniel cover numerous North Carolina counties but not Mecklenburg, and Williamson asked Bell to start the process of adding such a restriction against McDaniel."

l) "and the reasons she files so many suits"

m) "Williamson responded by describing McDaniel's comments as "quite an inspired stream of gibberish and mendacity."

n) "Bell said she will refer the request for a gatekeeper order to Senior Resident Superior Court Judge Bob Bell (who is not related to her)."

o) "Leesa Clardy was about to go to her children's elementary school in February when her mail carrier delivered a COD package. She paid the carrier $3.50, opened the package – and learned a fellow Eastover Elementary parent was suing Clardy in her role as a classroom volunteer. "I was just blindsided," Clardy recalls."

p) "Battle and other CMS leaders say they're thinking about asking state lawmakers to pass a law giving volunteers immunity from lawsuits when they're doing public school business. It's unclear how many other districts could find themselves in a similar fix. Battle says he has yet to find another North Carolina district with a policy providing legal protection for volunteers."

q) "As for the suit that has forced the question, "it's bizarre in a lot of respects," Battle says. "That's the most diplomatic way to say it.""

r) "McDaniel has filed more than 50 lawsuits in Mecklenburg, Guilford and other North Carolina counties, against public bodies, lawyers, landlords and others she has done business with. Court records show she has been the subject of a "gatekeeper order" – a restriction that requires court approval to file lawsuits in order to prevent abuse of the process – which has been registered in numerous counties."

s) She has run unsuccessfully for public office in Greensboro using the nickname "Queen Get 'Er Done."

t)

u) "McDaniel did not return calls from the Observer seeking comment on the suit against CMS."

v) "Her campaign page addresses the question that "they say you sue people all the time. What's up with that?" Her answer is that she completed one year of law school and is an entrepreneur who has filed suits against clients who owe her money."

w) "According to the Jan. 24 suit in Mecklenburg County Superior Court, which seeks at least $175,000 in compensatory and punitive damages, McDaniel's son was assigned to Winterfield Elementary when he started kindergarten in 2015, but transferred to Idlewild Elementary for medical reasons."

x) "Meanwhile McDaniel's son was moved to Orr Elementary, then transferred to Eastover for the last week of the 2016-17 school year. He returned in August 2017. The suit says her son came home with M&Ms in October and told McDaniel that Susan Holloway, the mother of one of her son's friends, gave them to him. The suit says McDaniel demanded an investigation and the school told her that a teacher had given her child the M&Ms.

> a. Holloway, who was named in the initial complaint filed in January, wouldn't comment.
>
> b. Clardy says her son was in the same class as McDaniel's son but she did not know the child. She says she encountered McDaniel in October when Clardy came to the class to get students to sign a card for a sick teacher. McDaniel asked Clardy's name, and Clardy says she thought no more about it until she received legal papers adding her to the lawsuit. That motion, filed Feb. 6, says only that Clardy was a classroom parent "at all times material hereto."

- y) "If I were in Mr. and Mrs. Clardy's shoes, I'd be upset and disappointed too," Battle said. "It's a shame we have to spend tax dollars defending a frivolous suit. It's a shame folks who give of their time, who give of their ability, would have that in the back of their mind."

- z) "Shortly after the classroom party that led to the suit against Eastover faculty and volunteers, Holloway retained lawyer Lane Williamson. He emailed McDaniel telling her to direct any further communication through him and saying that he will "pursue sanctions against you for filing a frivolous lawsuit" if she pursues "false and defamatory allegations" against Holloway."

3. Beginning on or about May 25, 2018, Defendants did factually publicly publish copies of Plaintiff's copyrighted images displaying her likeness and copyrighted statements from her copyrighted website, both www.SeeTigressRun.com and www.QueenGetErDone.com, and Defendants did factually make unauthorized use of her copyrighted work, including but limited to text, graphic designs and trademarks, and images, which are also detailed in the attached exhibits. All works referred to herein denote conspicuous notice of copyright.

4. On or about April 9, 2018, pursuant to U.S.C. Title 17, regarding copyright infringement, and NCGS § 99.1 (a) et sequel, regarding libel and slander (defamation), Plaintiff submitted a formal Cease and Desist letter, wherein she specified the articles and statements therein alleged to be false and/or defamatory (Attached as Exhibit separately).

5. To date, Defendants have not ever responded to Plaintiff's letter detailed in paragraph 3.

6. On or about May 21, 2021, because the unretracted and still yet publicly published articles with the same false defamatory libelous statements still appeared, Plaintiff once again submitted a Cease and Desist Letter to Defendants and also submitted a complaint through the Federal Trade Commission (hereinafter "FTC") (Attached as Exhibit separately).

7. To date, neither Defendants nor the FTC have ever responded to Plaintiff's letter detailed in paragraph 5, nor even acknowledged her letter.

8. To date, Defendants have not ever removed nor retracted any of the articles and statements detailed in Plaintiff's letter, which is detailed in preceding paragraphs herein.

9. Upon information and belief, Plaintiff asserts and alleges that Defendants defamed Plaintiff in knowing acts of malice, oppression and fraud to subserve her opposing candidate for the past political election, and alternatively have persisted in maintaining these libelous publications, unretracted, to bind the malicious oppression of Plaintiff to instill fear, intimidation and harassment to make her (1) abandon her validly merited complaint against CMS for noncompliance of her minor child's 504 plan, (2) stop running for office, (3) even seclude herself and succumb to mental demise and psychological death, and (4) emotionally distress both Plaintiff and her son and intimidate her minor child to consider suicide.

- **SPACE LEFT INTENTIONALLY BLANK -**

# FIRST CAUSE OF ACTION
(Gross and/or Vicarious Negligence, Negligence, and/or Negligence Per Se for An Amount In Controversy Exceeding $75,000.00 USD)

A *prima facie* case for gross negligence requires a showing that: (1) Defendant(s) owed a duty of care to Plaintiff, (2) Defendants failed to perform such duty, (3) an injury resulted from such failure, and (4) Defendants had knowledge about the potential consequences of such carelessness.

4. Plaintiff reincorporates and realleges all claims set forth in preceding paragraphs and discussed in this subsection.
5. NCGS § 99.1 enjoins newspapers, radio and television against libel and slander. Defendants are a "newspaper," and thus owe a duty of care to refrain from publishing false defamatory libel about Plaintiff and otherwise exercise reasonable care to avoid negligent publications that defame a person;
6. Defendants failed to perform such duty, thus a breach of the duty that Defendant owed Plaintiff occurred.
7. Plaintiff did, in fact, suffer harm, resulting from Defendants' failure to perform such duty, thus harm resulted.
8. Defendants false defamatory libelous statements are proximate and actual cause of Plaintiff's harm.

A complaint for gross negligence requires a showing of extreme conduct.

9. All Defendants had knowledge about the potential consequences of such negligence.
10. Plaintiff did factually comply with NCGS § 99.1(a) and submit a Cease and Desist letter to Defendants specifying the articles and statements therein alleged to be false and defamatory, to which Defendants not ever responded.

11. The libelous articles have remained publicly published, unretracted, since 2018. Further, Defendants now require an at costs subscription to view their articles. Defendants have received monetary gain at the expense of Plaintiff's suffering.

12. Defendants have known and remain expressly aware that the statements are false, and yet have still failed to publish a retraction, thus Defendant's conduct constitutes actionable actual malice.

13. Defendants have demonstrated a lack of slight diligence or care and a markedly conscious, voluntary act or omission in reckless disregard of a legal duty owed to Plaintiff, and furthermore, reckless disregard of the detrimental consequences to the Plaintiff that would result from their gross negligence.

**SECOND CAUSE OF ACTION**
(28 U.S. Code § 4101 Defamation and Libel, Defamation Per Se, Defamation Per Quod)

A *prima facie* case for defamation, a plaintiff must show four things: 1) a false statement purporting to be fact; 2) publication or communication of that statement to a third person; 3) fault amounting to at least negligence; and 4) damages, or some harm caused to the person or entity who is the subject of the statement.

14. Plaintiff reincorporates and realleges all claims set forth in preceding paragraphs and discussed in this subsection.

15. Defendants harmed Plaintiff by making the knowingly false and alternatively negligent unverified libelous statements about her;

16. That Defendant made more than one statement to others than just merely directly to Plaintiff alone;

17. That Defendant, as inarguably demonstrated in the articles, expressly and alternatively reasonably understood that the statements were about Plaintiff;

18. That Defendant's fault amounts to at least negligence and assertedly more than negligence constituting actionable actual malice;

19. That because of the facts and circumstances known to the Defendants readers of the statement, they tended to and did factually injure Plaintiff in her occupation, including but not limited monetary expenses to implement advertising for damage control to protect her personal and professional reputation and for profit small business; and

20. That the statements were a substantial factor in causing Plaintiff's harm;

21. That a reasonable person would and does apprehend that filing 162 cases in 72 counties, and as an indigent person, is implausible, given Plaintiff's occupation and school enrollment and other demographics, which Defendants did factually report and publicly publish in their articles, even prior to Plaintiff submitting a Cease and Desist letter through which Defendants became reasonably aware that such statements were wholly false, and that such is clear and convincing evidence that Defendant knew the statements were false or had serious doubts about the truth of the statements.

## THIRD CAUSE OF ACTION
(Title 17 U.S. Code § 501 Infringement of Copyright)

A prima facie for copyright infringement requires a showing of (1) unauthorized use of another's copyrighted works, (2) notice to the unauthorized user that use is prohibited, and (3) unauthorized user's ignoring of copyright holder's cease and desist letters.

22. Plaintiff reincorporates and realleges all claims set forth in preceding paragraphs and discussed in this subsection.

23. That Defendants not ever sought authorization to use Plaintiff's copyrighted works and her likeness in images and were not ever authorized to use Plaintiff's copyrighted works nor her likeness;

24. That Defendants were notified through Cease and Desist letters that Plaintiff prohibited their use of her copyrighted works and likeness; and

25. That Defendants willfully ignored Plaintiff's Cease and Desist letters and persisted, even to date, in publicly publishing the libelous articles, unretracted, detailed herein.

### D. INJURY, ITEMS OF DAMAGE AND ELEMENTS OF DAMAGE

26. Plaintiffs have suffered the following injuries, including but not limited to:
    a. Financial losses;
    b. Harm to Plaintiff's property, business, trade, profession, personal reputation, academic standing and reputation, and occupation;
    c. Public disdain, ridicule, ostracization, discrimination;
    d. And Plaintiff's minor child has suffered shame, mortification and/or hurt feelings;
    e. And adverse decisions for Pandemic Relief SBA7(a) Loan programs, life insurance applications, leasing applications and the like.

### E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

27. Plaintiff has no other lawsuits against Defendants.

- SPACE LEFT INTENTIONALLY BLANK -

## F. PRAYER FOR RELIEF

WHEREFORE, Plaintiff request and otherwise lawfully demands the following forms of relief and specific performance:

a. That injunction be ordered to enjoin Defendants to remove and/or retract all articles herein detailed;

b. Compensatory damages;

c. Formal Letter of apology;

d. Punitive damages, where available;

e. And all other forms of relief for Plaintiff deemed appropriate by law.

Submitted on this 17th day of February, 2022,

*[signature]*

Tigress McDaniel, Plaintiff *pro se*
10926 Quality Drive Unit 38813
Charlotte, NC 28278

# CERTIFICATE OF SERVICE

Plaintiff hereby certifies that sufficient copies of the foregoing have been placed in the custody of the United States District Court on this 17th day of February 2022 in full accordance with Federal Rules of Civil Procedure and all other applicable law to be delivered upon the Defendants at the addresses below, respectively:

1. The McClatchy Company for all Defendants as parent corporation and principal

   Craig Forman, Chief Executive Officer
   2100 Q Street
   Sacramento, California 95816

Tigress McDaniel
Plaintiff *pro se*
10926 Quality Drive Unit 38813
Charlotte, NC 28278

Date: February 17, 2022